<u>**TRANSCRIBED FROM DIGITAL RECORDING**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN COTTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| -vs- | ) | Case No. 16 C 4565 |
| | ) | |
| R.D. ADAMS, P.O., #11786, et al., | ) | Chicago, Illinois |
| | ) | January 26, 2017 |
| | ) | 10:25 a.m. |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MARIA VALDEZ, MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:     MR. BRIAN M. OROZCO
                       Gregory E. Kulis & Associates, Ltd.
                       30 N. LaSalle Street, Suite 2140
                       Chicago, IL 60602
                       (312) 580-1830
                       E-mail: Borozco@kulislawltd.com

For the Defendant:     MS. KRISTIN M. PINKSTON
                       City of Chicago Department of Law
                       30 N. LaSalle Street, Suite 900
                       Chicago, IL  60602
                       (312) 744-9212
                       E-mail:  Kristin.pinkston@cityofchicago.org

Also Present:          Ms. Latonya Walker

        **PLEASE NOTIFY OF INCORRECT SPEAKER IDENTIFICATION**
          NOTE:  FAILURE TO STAND NEAR THE MICROPHONE MAKES
            PORTIONS UNINTELLIGIBLE AND INAUDIBLE.

Transcriber:
        KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                Official Court Reporter
              United States District Court
          219 South Dearborn Street, Suite 2524-A
                Chicago, Illinois  60604
              Telephone:  (312) 435-5569
                  www.KathyFennell.com

1    (Proceedings heard in open court:)

2        THE CLERK:  Case 16 C 4565, Cotton versus Adams, et

3    al., status and motion hearing.

4        MR. OROZCO:  Good morning, your Honor.  Brian Orozco,

5    O-R-O-Z-C-O, on behalf of plaintiff.

6        MS. PINKSTON:  Good morning, your Honor.  Kristin

7    Pinkston on behalf of defendants.

8        MS. WALKER:  Good morning, your Honor.  Latonya

9    Walker, the guardian of Stephen Cotton.

10        THE COURT:  All right.  Well, Mr. Orozco, where are

11   we with everything?

12        MR. OROZCO:  I haven't been able to reach my client,

13   so -- and Stephen Cotton is not present in court.

14        MS. WALKER:  Stephen Cotton is not present in court

15   because I am his durable power of attorney, and I have

16   reported Brian Orozco and Gregory Kulis to the ARDC because

17   they threatened me and my son.

18        THE COURT:  All right.  So you are the -- how old is

19   your son?

20        MS. WALKER:  Stephen's 19.  He's disabled.

21        THE COURT:  Okay.

22        MS. WALKER:  But he's covered by -- yeah, I have the

23   legal paperwork pertaining to him, his disability along with

24   his IEP and basically the durable power of attorney.

25        THE COURT:  And Mr. Orozco, your agreement of

1  representation was with whom?

2  MR. OROZCO:  It was with Stephen Cotton.  I wasn't

3  aware that she had a durable power of attorney.

4  THE COURT:  So he signed off on the retainer

5  agreement?

6  MR. OROZCO:  Initially when we signed up Stephen

7  Cotton, he was a minor at the time, so the original retainer

8  agreement was with Stephen and Latonya.

9  Then they decided not to use our representation.

10  THE COURT:  And then he became of age?

11  MR. OROZCO:  Of age, and then he signed the retainer

12  agreement by himself.

13  THE COURT:  A second one --

14  MR. OROZCO:  A second one --

15  THE COURT:  -- by himself.

16  MR. OROZCO:  -- when he was an adult.

17  MS. WALKER:  Your Honor, may I say something?

18  THE COURT:  You may.

19  MS. WALKER:  Stephen was unaware of these documents.

20  Mr. Orozco took him in a back room away from me, and he signed

21  these papers.  I never got a copy.  Stephen never got a copy

22  of these papers.

23  THE COURT:  Mr. Orozco, what was the date of the

24  second retainer agreement where he signed on his own?

25  MR. OROZCO:  To be perfectly honest, I don't know the

1   exact date, but I do know that she has a copy of the retainer

2   agreement.  She attached it to the ARDC complaint.  She was

3   present in the room when Stephen signed the retainer

4   agreement.

5              MS. WALKER:  That's when he was a minor.

6              MR. OROZCO:  No, that's when he was an adult.

7              MS. WALKER:  You know -- your Honor, I also

8   discharged Brian Orozco back in January 25, '16 because he

9   lied, he lied to my son --

10             THE COURT:  I guess the issue is who has

11  responsibility for --

12             MS. WALKER:  I do.

13             THE COURT:  -- agreement here, whether or not your

14  son, being of age, could enter into an agreement on his own or

15  whether he could not.

16             So right now, we have a motion to enforce a

17  settlement agreement that, according to the motion, had been

18  reached by the parties.  And so what is your position on that

19  now?

20             MS. WALKER:  I'm totally in disagreement because I

21  was threatened by Gregory Kulis and Brian Orozco.  I was told

22  by Gregory Kulis if I do not sign the agreement, therefore

23  he's going to put a lien against me and drop my case.

24             Then he told me it wouldn't look good if my son came

25  out in handcuffs in front of jurors that are from Naperville

1 and Wilmette.

2 THE COURT: All right. Well, what do you want to do
3 as the movant?

4 MS. PINKSTON: Your Honor, my understanding was that
5 Judge St. Eve actually did grant the motion --

6 THE COURT: Oh, she did?

7 MS. PINKSTON: -- to enforce, and that today's
8 referral was for the purpose of determining whether there was
9 any issue as to the actual guardianship and for today for
10 Mr. Cotton to be in court, be available to answer these
11 questions and to sign the documents.

12 THE COURT: So I don't have an order on the docket
13 indicating that it had been granted. Did she indicate that in
14 open court?

15 MR. OROZCO: I --

16 MS. PINKSTON: That was my recollection, your Honor,
17 yes.

18 MR. OROZCO: But I do know that the minute order did,
19 if I'm not mistaken, give you the power to enforce.

20 THE COURT: Right. The referral was to me to deal
21 with the motion to enforce, but counsel is making a
22 representation --

23 MR. OROZCO: That's what I was -- I thought so, too.

24 THE COURT: -- that Judge St. Eve has granted the
25 motion to enforce.

1          MR. OROZCO:  Right, and that she referred it to you
2    to see if we could resolve it amicably without forcing --
3          THE COURT:  But, right, I guess in terms of a
4    collective -- collection action.
5          MR. OROZCO:  Right.
6          THE COURT:  But so, counsel, when do you believe that
7    Judge St. Eve granted the motion to enforce?
8          MS. PINKSTON:  It was at last week's hearing.
9          THE COURT:  Okay.
10          MS. PINKSTON:  So that was the --
11          THE COURT:  This would be the 18th?
12          MS. PINKSTON:  Yes.  So it was the status hearing,
13    and my co-counsel had motioned the -- or, excuse me, had
14    noticed the motion before your Honor.
15          THE COURT:  Right.
16          MS. PINKSTON:  And so I represented to Judge St. Eve
17    that when my co-counsel did that, we assumed, because it had
18    originally been referred to you for settlement purposes, that
19    that would have been appropriate and essentially told her, you
20    know, we had made a mistake with that.  We should have noticed
21    it before Judge St. Eve.  Then could we re-notice it.
22          And so Judge St. Eve heard the positions, and my
23    understanding was that it was granted but referred to you for
24    the purpose of actually signing the documents.
25          MR. OROZCO:  Enforcing.

1     MS. PINKSTON:  And enforcing it.

2     MS. WALKER:  May I say --

3     THE COURT:  Hold on, just a moment.

4     MS. PINKSTON:  If I misunderstood that, that was in

5     open court.  Mr. Orozco was over the telephone.

6     MR. OROZCO:  That was my understanding as well.

7     THE COURT:  Well, I'll get a copy of the proceeding

8     in front of Judge St. Eve so I can make sure that I'm not

9     doing anything that she's already done.

10     MR. OROZCO:  Okay.

11     THE COURT:  Yes.

12     MS. WALKER:  I have paperwork that the secretary from

13     Gregory Kulis had sent me.  They don't have no dates, no

14     signatures, no nothing.  So as far as the settlement goes, I

15     have the paperwork right here.

16          As far as the settlement goes, they didn't even sign

17     off on it.  So all the work they're sending me is basically --

18     THE COURT:  Wait, you know, I'm not telling you how

19     anything goes.  In general, though, an oral agreement is

20     enough.  It doesn't have to be in writing.  So that's the

21     general rule of law, as long as it meets the legal

22     requirements of an agreement.

23     MS. WALKER:  Okay --

24     THE COURT:  So it doesn't have to be in writing.

25     MS. WALKER:  Okay.  And I also would like to say they

1  did breach the contract because they did not discuss with me a

2  stipulation of dismissal of the officers.  They never

3  discussed that with me.  They just basically send me paperwork

4  and that was it for me to sign, and I had to read it.  So me

5  and Brian Orozco never even had any conversation about

6  dismissing officers.  I told Brian when I hired him what --

7       THE COURT:  What I'm going to let you do, I'll let

8  you submit in writing a response to the motion to enforce

9  since at least we have an agreement that I have to do

10  something with the motion to enforce.

11       MR. OROZCO:  Your Honor, I just -- some of the issues

12  I think that you can clarify right now in open court.  She

13  thinks that we've dismissed these officers.

14       THE COURT:  Nothing has happened right now.

15       MR. OROZCO:  These officers are still defendants.

16       THE COURT:  But I will say without having reviewed

17  the motion to enforce, when there's a settlement agreement,

18  part of -- I do these three to four times a week.  Part of the

19  agreement will be a dismissal of the case because that's what

20  you're buying, and it's a dismissal with prejudice.  That's

21  what you get for, you know, whatever kind of money you get.

22       So that's a normal, standard, nothing unusual,

23  nothing strange about that.

24       MS. WALKER:  Okay.  And I just want to say one more

25  thing.

1          He never discussed that with me.  And also it was
2  also brought to his attention about my son being disabled, has
3  an IEP, in a special needs school, all this was brought to his
4  attention.  So basically when he did --
5          THE COURT:  But that may not necessarily mean that
6  he's not -- he's not legally capable of making his own
7  decision.  Those are two -- two different things.
8          MS. WALKER:  He's not, and I have the paperwork to
9  prove it.
10          THE COURT:  Okay.  Well, I'm going to give you a
11  chance --
12          MS. WALKER:  Okay.
13          THE COURT:  -- to, but you're going to have to file
14  it with the Court, and you'll file it as a response to
15  defendants' motion to enforce, and you'll attach any
16  documents.
17          But I want you to be very, very clear.  I'm not
18  talking -- I'm not dealing with any complaints that you have
19  from the ARDC.  This is about the motion to enforce.  That's
20  all I want to know about.
21          If you believe that the law said that you're the only
22  one that can make decisions for him, then you can attach
23  whatever you have to that response, okay?
24          MS. WALKER:  Okay.
25          THE COURT:  All right.  And then I'll figure out what

1  Judge St. Eve said or did and then we'll generally, in turn,

2  continue it.  And once I get a copy of the transcript, I'll

3  reset this once again.

4        All right.  Anything else?

5        MR. OROZCO:  No, your Honor.

6        MS. PINKSTON:  No.

7        THE COURT:  All right.  Thank you.

8        MS. PINKSTON:  Thank you.

9        MS. WALKER:  So may I -- would I be getting a copy

10  from you or from --

11        THE COURT:  A copy of what?  You can go get a copy

12  from the clerk's office of the motion.

13        MS. WALKER:  Okay.

14     (Which were all the proceedings heard.)

15                      CERTIFICATE

16     I certify that the foregoing is a correct transcript from

17  the digital recording of proceedings in the above-entitled

18  matter to the best of my ability, given the limitations of

19  using a digital-recording system.

20

21  */s/Kathleen M. Fennell*                    *January 26, 2017*

22  _____         _____
    Kathleen M. Fennell                    Date
23  Official Court Reporter

24

25