IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN COTTON, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>P.O. R.D. ADAMS 311786, P.O. )<br>D.D. LAMON ) #11171, P.O. )<br>DEWITT, #11874, P.O. VENGAS ) )<br>11915, P.O. HELMOLD #14321, )<br>P.O. ERIC ) RASHAN #1083, P.O. )<br>KEITH STOYAK, P.O. ) DENNIS )<br>GOKOGLY #7076 individually, )<br>and CITY OF CHICAGO )<br>)<br>Defendants. )<br>) | No. 16 C 4565<br><br>Magistrate Judge<br>Maria Valdez |

## REPORT AND RECOMMENDATION

Maria Valdez, Magistrate Judge.

This matter was referred to the Court for a Report and Recommendation on third party Ms. Latonia Walker's ("Walker") response [Doc. No. 52] to the Defendants' Motion to Enforce Settlement Agreement. [Doc. No. 42]. As the parties' counsel represented in open Court that Defendants' motion should be granted, and as Walker did not timely file her response to the motion; this Court originally granted Defendants' motion as unopposed on February 10, 2017. [Doc. No. 50]. However on February 13, 2017, Walker, the Plaintiff's mother, filed a response-in-opposition to the motion[1]. Walker noticed her response before the District Court,

---

[1] The Court originally notified Walker of her obligation to file a response to the Defendants' motion during the Court's January 26, 2017 motion hearing. The Court did not set a deadline for Walker's response during the motion

1

and the District Court in turn referred Walker's response to this Court for consideration.[2] In light of Walker's response, the Court will *sua sponte* reconsider its ruling on the Defendants' motion to enforce. For the reasons set forth below, the Court respectfully recommends the District Court grant Defendants' motion to enforce.

## BACKGROUND

The Defendants originally filed their motion to enforce on January 13, 2017, seeking enforcement of a settlement agreement reached between the parties in December of 2016. Specifically, on December 8, 2016, the Defendants tendered their settlement offer to one of the Plaintiff's attorneys, Mr. Gregory Kulis ("Kulis"). The material terms of the settlement offer were quintessentially ordinary – in exchange for $30,000, the Plaintiff would dismiss the entirety of this lawsuit with prejudice. On December 13, 2016 Kulis in turn advised counsel for the City of Chicago, Ms. Carolyn Fronczak ("Fronczak") that Kulis had spoken to the Plaintiff, and that the Plaintiff accepted the Defendants' offer to settle. Plaintiff's counsel then called the Court that same day and advised the Court that a settlement in principle had been

---

hearing, and later set a February 8, 2017 deadline in the Court's February 1, 2017 order. [Doc. No. 48]. Walker's response was received five days after the deadline. However, while normally a litigant's *pro se* status does not provide an exemption from procedural rules or court-imposed deadlines, *see Casio Computer Co. v. Noren*, No. 00 C 1428, 2001 WL 893813, at *3 (N.D. Ill. Aug. 6, 2001); *aff'd sub nom Casio Computer Co. v. Noren*, 35 F. App'x 247, 250 (7th Cir. 2002), it appears that Plaintiff's counsel, Mr. Brian Orazco ("Orazco"), did not provide Walker with a copy of the Court's order containing the filing deadline. As such, it is conceivable that while Walker understood she was required to file a response to Defendants' motion, she was unaware of the date that the response had to be filed. Therefore, per the Court's inherent powers to control the course of litigation, the Court will treat Walker's submission as timely, and will consider the substance of her response when re-deciding this motion.

[2] Walker also has submitted a February 21, 2017 "Motion to Uninforce [sic] Settlement Amount Get Better Offer." [Doc. No. 54]. This document is substantially similar to the Walker's original response, and only contains one additional document: a December 20, 2016 "Statement of Settlement" sent from the Plaintiff's attorneys to Walker. As such, the Court will not consider Walker's recent response as it will have no impact on the Court's conclusion.

2

reached. Shortly after receiving the Plaintiff's acceptance, the Defendants prepared settlement documents and sent them to Plaintiff's counsel. The Court similarly set a status hearing regarding the settlement agreement for January 12, 2017.

At the January 12, 2017 status hearing, Plaintiff's current counsel reiterated that an agreement had been reached. However, Plaintiff's counsel also stated that while he had not yet obtained the Plaintiff's signature on the settlement documents because he could not reach the Plaintiff, he would have no objection should the Defendants file a motion to enforcement of the agreement. In response to this, the Court set another status hearing for January 26, 2017 and ordered the Plaintiff to personally appear at the status hearing. The Defendants similarly filed the instant motion to enforce the next day on January 13, 2017.

The Plaintiff did not appear at the January 26, 2017 status. Instead Walker appeared. Walker is not a party lawsuit, but purported to be the Plaintiff's guardian of sorts, claiming that she had a durable power of attorney over her disabled 19 year old son. [Doc. No. 47, *Transcript of January 26, 2017 Status and Motion Hearing*, at 2:8-9, 2:22-23]. Walker opposed Defendants' motion to enforce because she claimed that the Plaintiff's attorneys "threatened [her and the Plaintiff] [saying] 'if I do not sign the agreement […] [Plaintiff's counsel] will put a lien against me and drop my case.'" [Tr. at 4:20 – 5:1]. Walker also stated that she received paperwork from the Plaintiff's attorneys' secretaries, and none of that paperwork was signed.[3] [Tr. at 7:12-17]. Walker similarly stated that the Plaintiff's attorneys never discussed the

---

[3] As the aforementioned December 20, 2016 "Statement of Settlement" included in her February 21, 2017 "motion" was also unsigned, the Court believes this was the document Walker referred to during the January 26, 2017 status hearing.

3

dismissal of the officers. [Tr. at 7:25 – 8:6]. Lastly, Walker stated that her son was disabled and she would be able to prove this with paperwork. [Tr. at 9:1-5; 9:8-9].

To more fully flesh out her concerns, the Court allowed Walker to file a response to the motion, and the Court has since received said response. Walkers' response is five-pages long and consists of five individual documents: (1) a handwritten brief-in-support of her position; (2) a February 10, 2017 letter from Plaintiff's attorneys to the Plaintiff and Walker stating the Defendants' instant motion to enforce was granted; (3) the enclosure to said letter, a print-out of the Court's February 10, 2017 order granting the Defendants' motion as unopposed, which bears Walker's handwriting summarizing her legal basis for opposing the motion; (4) the postal envelope containing the aforementioned two documents; and (5) the first page of a July 22, 2015 "Redetermination Summary for Determining Continuing Eligibility for Supplemental Security Income Payments." [See Doc. No. 51, *Latonya Walker Resp. in Opp'n to Defs' Mot. to Enforce Settlement Agreement*]. Documents two through four contain no cognizable basis for undoing the valid settlement agreement, so the Court will only consider documents one and five, neither of which persuasively undoes the valid settlement agreement.

## DISCUSSION

In her brief-in-support, Walker argues that her Right to Due Process and Right to Effective Assistance of Counsel were violated by Plaintiff's counsel. However, the Court need not consider the merits of these arguments as Walker is not a party to the lawsuit and has not shown she has standing raise either theory.

4

*See generally Sierakowski v. Ryan*, 223 F.3d 440, 442–43 (7th Cir. 2000) ("a party must demonstrate they have (1) an "injury in fact"—an invasion of a legally recognized interest which is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal link between that injury and the defendant's action, such that the injury is fairly traceable to the action complained of; and (3) that a favorable decision will likely redress the injury.") Walker neither argues that the enforcement of the settlement agreement would negatively impact her in any way, nor how the undoing of the settlement agreement would redress this non-existent injury.

Equally inapposite are Walker's arguments that the settlement agreement is unenforceable because it is unsigned. Oral settlement agreements are enforceable under Illinois law if "there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007); *citing Wilson v. Wilson,* 46 F.3d 660, 666 (7th Cir.1995), *quoting Brewer v. Nat'l R.R. Corp.,* 256 Ill.App.3d 1083, 194 Ill.Dec. 834, 628 N.E.2d 331, 335 (1993)). The essential terms must be "definite and certain" so that a court can ascertain the parties' agreement from the stated terms and provisions. *Dillard*, 483 F.3d at 507; *citing Quinlan v. Stouffe,* 355 Ill.App.3d 830, 291 Ill.Dec. 305, 823 N.E.2d 597, 603 (2005). Whether a "meeting of the minds" occurred depends on the parties' objective conduct, not their subjective beliefs. *Id. citing Paxton–Buckley–Loda Educ. Ass'n, IEA–NEA v. Ill. Educ. Labor Relations Bd.,* 304 Ill.App.3d 343, 237 Ill.Dec. 908, 710 N.E.2d 538, 544 (1999).

Here, the simplicity of the settlement agreement underscores the obviousness of its material terms – the Plaintiff will dismiss the lawsuit in exchange for $30,000. Both parties indicate that a settlement was reached, and the non-party Walker is the only individual with an objection to granting the motion. Likewise, although Walker claims she was unaware that settling this lawsuit would require its dismissal, this is immaterial as Walker does not argue, much less prove that the Plaintiff disagreed to these terms when he first assented to the settlement offer.

The only way Walker may show the settlement was invalid is to demonstrate that the Plaintiff lacked the capacity to contract at the time he assented to the December 2016 settlement agreement. *See generally In re Lewis-Pride*, 330 B.R. 660, 662 (Bankr. N.D. Ill. 2005); *citing Johnston v. Malm,* 50 Ill.App.2d 182, 200 N.E.2d 14, 15 (Ill.App.Ct.1964) ("under Illinois law, a contract is not binding if one of the parties, at the time of the agreement, was incapable of understanding the nature of the transaction upon which he was about to embark, thereby rendering assent to the terms of the contract impossible"). The Court respectfully recommends the District Court find she has not done so.

None of the documents provided in Walker's response show that the Plaintiff was unable to contract at the time he agreed to the settlement offer. The July 22, 2015 "Redetermination Summary for Determining Continuing Eligibility for Supplemental Security Income Payments" does not mention the Plaintiff's alleged disability, nor does it tend to show that the Plaintiff could not assent to the settlement offer at the time it was made. Similarly, while Walker claims an agency

6

relationship with the Plaintiff be it through guardianship or by way of a durable power of attorney, Walker has provided no support for this contention whatsoever. She has not provided a court's appointment of guardianship, a power of attorney, or a medical record that would provide competent proof that the Plaintiff lacked capacity to agree to the offer in December of 2016.[4] Lastly, Walker's failure to provide any support for her purported agency relationship also precludes her from arguing that her co-agreement was required to bind the Plaintiff to the settlement offer. In sum, the Court respectfully requests that the District Court find that Walker has not met her burden of showing the Plaintiff's assent to the settlement agreement was invalid.

What Walker seeks, is to undo the settlement agreement because, as Walker states in her brief-in-support, she wants to "come to a better settlement agreement." However, this is a categorically unacceptable basis for undoing a valid settlement agreement, particularly when the request comes from a non-party. *See Glass v. Rock Island Refining Corp.,* 788 F.2d 450, 454-55 (7th Cir. 1997) ("A party to a settlement cannot avoid the agreement merely because he subsequently believes

---

[4] The Illinois Power of Attorney Act defines "Incapacitated" as: [when the principal] "is under a legal disability as defined in Section 11a-2 of the Probate Act of 1975." *See* 755 ILCS 45/2-3(c-5) The Probate Act provides, in relevant part, that a disabled person is a person: "who (a) because of mental deterioration or physical incapacity is not fully able to manage his person or estate, or (b) is a person with mental illness or a person with a developmental disability and who because of his mental illness or developmental disability is not fully able to manage his person or estate […]." *See* 755 ILCS 5/11a-2 (subsections (c) and (d) omitted). *See also* 755 ILCS 5/11a-3 (a court will make a determination of disability only upon a showing by clear and convincing evidence that a person is disabled within the meaning of the Probate Act).

The Power of Attorney Act also provides "[a] principal shall also be considered incapacitated if: (i) a physician licensed to practice medicine in all of its branches has examined the principal and has determined that the principal lacks decision making capacity; (ii) that physician has made a written record of this determination and has signed the written record within 90 days after the examination; and (iii) the written record has been delivered to the agent. The agent may rely conclusively on the written record." 755 ILCS 45/2-3(c-5)

7

that settlement insufficient [...] a party who previously authorized a settlement 'remains bound by the terms of the agreement' and cannot simply 'change his mind'") (citations omitted); *see also Alex v. Amtrak,* No. 04 C 4475, 2005 WL 1660622, at *2 (N.D. Ill. June 10, 2005) ("Parties to a settlement agreement, otherwise enforceable, cannot avoid the agreement merely because one of them has second thoughts [...]").

## CONCLUSION

It is for those aforementioned reasons; the Court respectfully recommends that Defendants' Motion to Enforce Settlement Agreement [Doc. No. 42] be GRANTED. Stephen Cotton and the listed Defendants have fourteen days from the date of service of this Report and Recommendation to file objections with the District Court. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Tumminaro v. Astrue*, 671 F.3d. 629, 633 (7th Cir. 2011). Motion hearing set for February 28, 2017 is stricken.

**SO ORDERED.** **ENTERED:**

*[signature: Maria Valdez]*

**DATE:** February 23, 2017

**HON. MARIA VALDEZ**
**United States Magistrate Judge**